**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | ) ) | No. CV-03-1827-PHX-DGC |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) ) | |
| Lennar Homes of Arizona, Inc., | ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court are motions for partial summary judgment, motions to supplement, and motions to amend filed by Defendant and motions to strike filed by both parties. Docs. ##48, 68, 70, 90, 92, 101, 104, 115, 131, 133, 145, 148, 152.[1]

### Background

Plaintiff Equal Employment Opportunity Commission commenced this action on September 18, 2003 by filing a complaint against Defendant that purports to state violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Doc. #1.

---

[1]The parties have requested oral argument on the motions for partial summary judgment. The Court will deny the requests because the parties' memoranda thoroughly discuss the law and evidence and the Court concludes that additional argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1   Plaintiff alleges in the complaint that since at least May 1, 2000, Defendant has terminated
2   employees, including Jacque Judge, Carol Nikrant, and Gordon Cameron, because of their
3   ages.  Doc. #1 ¶ 7.  Pursuant to the Court's case management order, Plaintiff filed a notice
4   on April 6, 2004 identifying Gregory Leach and Charlyne Sheehan as additional class
5   members on whose behalf Plaintiff will seek relief in this action. Docs. ##24, 33.

6                                      **Discussion**

7   **I.   Summary Judgment Standard.**

8          Summary judgment is appropriate if the evidence, viewed in the light most favorable
9   to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and
10  that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*
11  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Substantive law determines which
12  facts are material and "[o]nly disputes over facts that might affect the outcome of the suit
13  . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,*
14  *Inc.*, 477 U.S. 242, 248 (1986).  Similarly, to preclude summary judgment the dispute must
15  be genuine, that is, the evidence must be "such that a reasonable jury could return a
16  verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

17         The Ninth Circuit has "has set a high standard for the granting of summary
18  judgment in employment discrimination cases."  *Schnidrig v. Columbia Mach., Inc.*, 80
19  F.3d 1406, 1410 (9th Cir. 1996).  Very little evidence is required to survive summary
20  judgment in such cases "'because the ultimate question is one that can only be resolved
21  through a 'searching inquiry' – one that is most appropriately conducted by the factfinder,
22  upon a full record.'" *Id.* (citations omitted); *see Chuang v. Univ. of Cal. Davis*, 225 F.3d
23  1115, 1124 (9th Cir. 2000) (quoting *Schnidrig*).

24  **II.   Defendant's Motion for Partial Summary Judgment Re: Gregory Leach.**

25         **A.   Is Plaintiff's Claim Regarding Leach Time Barred?**

26         Defendant argues that Plaintiff's claim regarding Leach is untimely under 29 U.S.C.
27  § 626(d)(2) because Leach did not file a charge of discrimination with the EEOC within 300
28  days of his termination. Doc. #48 at 7-14.  Plaintiff argues that the claim is not time barred

1   because a private charge is not required for the EEOC to bring an action under the ADEA.

2   Doc. #105 at 5.  The Court agrees with Plaintiff.

3       Section 626(d)(2) provides, in pertinent part:  "No civil action may be commenced

4   by an *individual* under this section until 60 days after a charge alleging unlawful

5   discrimination has been filed with the [EEOC].  Such a charge shall be filed . . . within 300

6   days after the alleged unlawful practice occurred[.]"   29 U.S.C. § 626(d)(2) (emphasis

7   added).  On its face, § 626(d)(2) applies to actions brought by *individuals*, not the EEOC.

8   Moreover, the United States Supreme Court has held that "the EEOC's role in combating

9   age discrimination is not dependent on the filing of a charge; the agency may receive

10  information concerning alleged violations of the ADEA 'from any source,' and it has

11  independent authority to investigate age discrimination."   *Gilmer v. Interstate/Johnson*

12  *Lane Corp.*, 500 U.S. 20, 28 (1991) (quoting 29 C.F.R. §§ 1624.4, 1626.13 (1990)).  The Court

13  thus concludes that the 300-day limit set forth in § 626(d)(2) does not apply to Plaintiff's

14  claims.  *See Massachusetts v. Bull HN Info. Sys., Inc.*, 143 F. Supp. 2d 134, 144-45 (D. Mass.

15  2001) (holding that the 300-day limit in § 626(d)(2) does not apply to claims brought by the

16  EEOC); *Glass v. IDS Fin. Servs., Inc.*, 778 F. Supp. 1029, 1051 (D. Minn. 1991) ("[T]he

17  EEOC's ability to assert a direct action is not predicated on the filing of a timely charge[.]")

18  (citing *Gilmer*, 500 U.S. at 28); *EEOC v. Sperry-Univac Corp.*, No. C 81-0276J, 1982 WL 649,

19  *4 (D. Utah Nov. 29, 1982) ("Nothing in the express language of the ADEA or the

20  incorporated provisions of the [Fair Labor Standards Act] conditions EEOC enforcement

21  actions upon the timely filing of private charges of discrimination under § 626(d).").

22      Defendant further argues that Plaintiff's claim regarding Leach is barred by

23  the statute of limitations contained in the Portal-to Portal Act, 29 U.S.C. § 255(a).  Doc. #129

24  at 10-13.  The Court disagrees.  Former § 626(e) of the ADEA incorporated by reference the

25  statute of limitations contained in § 255(a).  29 U.S.C. § 626(e) (1988); *see Miller v.*

26  *Maxwell's Int'l, Inc.*, 991 F.2d 583, 586 (9th Cir. 1993) (holding that the plaintiff's ADEA

27  claims were not barred by the three-year limitations period contained in § 255 and

28  incorporated into former § 626(e)).  The Civil Rights Act of 1991, however, amended §

1   626(e) in part by deleting the reference to § 255(a). Pub. L. No. 102-166, 105 Stat. 1071

2   (1991) (codified at 29 U.S.C. § 626(e)); *see Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463,

3   464 n.1 (3d Cir. 1994) ("The Civil Rights Act of 1991 . . . amended section 626(e)(1) of the

4   ADEA. Under the current version of section 626(e), . . . section [255(a)] of the Portal-to-

5   Portal Act is no longer expressly incorporated[.]"); *Anderson v. Unisys Corp.*, 47 F.3d 302,

6   307-08 n.14 (8th Cir. 1995) ("[T]he Civil Rights Act of 1991 . . . changed the applicable

7   statute of limitations in ADEA actions.").[2]

8       The Court finds unpersuasive Defendant's argument that, despite Congress's

9   elimination of the explicit reference to § 255 in § 626(e), the limitations period contained in

10  § 255 still applies to ADEA claims because § 626(b) adopts the "procedures" set forth in

11  § 216 of the Fair Labor Standards Act ("FLSA"), which in turn adopts the limitations period

12  in § 255. *See Littell v. Aid Ass'n for Lutherans*, 62 F.3d 257, 258-59 (8th Cir. 1995) (rejecting

13  the argument that § 626(e)'s former explicit reference to § 255 was mere surplusage by

14  virtue of the indirect reference to § 255 in § 626(b)).

15      The cases Defendant relies on are also unpersuasive because they do not hold that

16  the limitations period contained in § 255 applies to ADEA actions. *See* Doc. #129 at 12.

17  In *McConnell v. Thomson Newspapers, Inc.*, 802 F. Supp. 1484 (E.D. Tex. 1992), the district

18  court concluded that the EEOC's claims were untimely under § 626(e) because it did not

19  bring suit within 90 days of notifying the person aggrieved that the EEOC proceedings had

20  terminated. 802 F. Supp. at 1500. The court reached this conclusion by broadly construing

21

22      [2]The current version of § 626(e) provides, in pertinent part:

23      If a charge filed with the Commission under this chapter is dismissed or the
24      proceedings of the Commission are otherwise terminated by the Commission,
        the Commission shall notify the person aggrieved. A civil action may be
25      brought under this section by a person defined in [§] 630(a) of this title
        against the respondent named in the charge within 90 days after the date of
26      the receipt of such notice.
27

28      29 U.S.C. § 626(e).

1    the EEOC as a "person" under § 630(a) on the ground that the EEOC constitutes a "legal

2    representative" when it files an ADEA action on behalf of individuals. *Id.* at 1499. This

3    Court does not agree with the reasoning in *McConnell* that the EEOC constitutes a

4    "person" as defined in § 630(a). *See Wilkerson v. Martin Marietta Corp.*, 875 F. Supp.

5    1456, 1460 (D. Colo. 1995) (rejecting *McConnell*'s broad construction of the term "person"

6    based on the compelling legislative history predating the Civil Rights Act of 1991 and "the

7    absurd results which application of . . . [a] statute of limitations would have" on ADEA

8    actions brought by the EEOC).

9         In *EEOC v. North Gibson School Corp.*, 266 F.3d 607 (7th Cir. 2001), the Seventh

10   Circuit held that the EEOC's action was untimely under § 626(d) because the aggrieved

11   individuals had not filed timely charges of discrimination with the EEOC. 266 F.3d at 616.

12   The court concluded that the filing requirement in § 626(d) applied to the EEOC on the

13   ground that it was "in privity" with the aggrieved individuals and acted as their

14   "representative" with respect to their interests in monetary relief. *Id.* Under controlling

15   Ninth Circuit law, however, employment discrimination actions brought by the EEOC are

16   not subject to a filing requirement or a limitations period because "[t]he EEOC vindicates

17   public policy by suing in federal court . . . *regardless of the type of relief sought*[.]" *EEOC*

18   *v. Occidental Life Ins. Co. of Cal.*, 535 F.3d 533, 539 (9th Cir. 1976) (emphasis added), *aff'd*,

19   432 U.S. 355 (1977). "[T]he fact that private parties may benefit from [an EEOC] action does

20   not detract from the public nature of those proceedings." *Id.*

21        The district court in *EEOC v. Oil Gear Co.*, 250 F. Supp. 2d 1193 (D. Neb. 2003), also

22   relied on the filing requirement in § 626(d) in holding that one of the EEOC's claim was

23   untimely because the aggrieved individual did not file a timely charge of discrimination.

24   250 F. Supp. 2d at 1196. The court failed to explain, however, why the filing requirement

25   in § 626(d)(2) – which explicitly refers claims brought by "individuals" – applied to the

26   EEOC's claim. *Cf. Gilmer*, 500 U.S. at 28 (holding that "the EEOC's role in combating age

27   discrimination is not dependent on the filing of a charge").

28        The Court concludes that Plaintiff's claim regarding Leach is not time barred

because no statute of limitations applies to ADEA actions brought by the EEOC. *See Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359-72 (1977) (holding that no statute of limitations applies to Title VII claims brought by the EEOC because the EEOC has the duty of investigating and attempting to conciliate claims and, "[u]nlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties"); *EEOC v. AT&T Co.*, 36 F. Supp. 2d 994, 995-97 (S.D. Ohio 1998) (adopting the reasoning of the Supreme Court in *Occidental Life Insurance* and holding that "there is no specific statute of limitations with respect to claims brought by the EEOC under the ADEA"); *Wilkerson*, 875 F. Supp. at 1459-60 (holding that "there is no applicable statute of limitations in age discrimination claims brought by the EEOC"); *cf. SEC v. Rind*, 991 F.2d 1486, 1491-92 (9th Cir. 1993) (citing *Occidental Life Insurance* and holding that no statute of limitations applies to civil enforcement actions brought by the Securities and Exchange Commission).

Defendant states in its reply that the notion that the EEOC "may file litigation at any time for any person . . . is 'utterly repugnant to the genius of our laws.'" Doc. #129 at 10-11 (quoting *Occidental Life Ins.*, 432 U.S. at 376 (Rehnquist, J., dissenting)).  As the majority opinion in *Occidental Life Insurance* explains, however, district courts have the power to provide relief to a defendant that has been "significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts." 432 U.S. at 373.  This is essentially a laches issue, which is addressed below.

**B.     Does the Single Filing Rule or Similarly Situated Requirement Apply to Plaintiff's Claim Regarding Leach?**

Defendant states that Plaintiff "is attempting to bootstrap relief for Leach into the Charging Parties' suit, even though Leach did not file a timely administrative charge with the EEOC." Doc. #48 at 8.  Defendant contends that Leach "should not be allowed to 'piggyback' onto the suit of the Charging Parties under the 'single filing rule.'" *Id.* (citing

1    *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1101 (11th Cir. 1996) (holding that the single filing

2    or "piggybacking" rule applies to ADEA cases)).    Defendant further contends that to

3    satisfy the single filing rule and the "similarly situated" requirement in 29 U.S.C. § 216(b),

4    Plaintiff "must establish that Leach's claim consists of 'similar discriminatory treatment'

5    and that it occurred 'in the same time frame' as the representative charge." *Id.* at 9 (citing

6    *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (holding that

7    plaintiffs must show that they are "similarly situated" to bring a representative suit under

8    § 216(b))).

9        Plaintiff argues that  that the "single filing rule" line of cases does not apply

10    because the EEOC has the authority to seek relief on Leach's behalf regardless of the

11    timeliness of his claim and thus has no need to "piggyback" his claim onto the timely

12    claims of the charging parties.  Doc. #105 at 6-7.  Plaintiff further argues that it is not

13    subject to the "similarly situated" requirement in 29 U.S.C. § 216(b) because that section

14    governs actions brought by "employees," not actions brought by the EEOC, which are

15    governed by 29 U.S.C. §§ 216(c) and 217.  *Id.* at 7 (citing *Donovan v. Univ. of Tex. at El

16    Paso*, 643 F.2d 1201, 1204 (5th Cir. 1981); *Flavel v. Svedala Indus., Inc.*, 875 F. Supp. 550,

17    553 (E.D. Wis. 1994); *Glass v. IDS Fin. Servs., Inc.*, 778 F. Supp. 1029, 1081 (D. Minn. 1991)).

18        The Court agrees with Plaintiff.  The ADEA enforcement section incorporates by

19    reference the enforcement provisions of the FLSA, including §§ 216 and 217.  29 U.S.C.

20    § 626(b) ("The provisions of this chapter shall be enforced in accordance with the powers,

21    remedies, and procedures provided in sections . . . 216 . . . and 217 of this title[.]").  Section

22    216(b) provides that an employer may be sued "by any one or more *employees* for and in

23    behalf of himself or themselves and *other employees similarly situated*."  29 U.S.C.

24    § 216(b) (emphasis added); *see Flavel*, 875 F. Supp. at 553 ("The ADEA incorporates by

25    reference the enforcement provisions of the [FLSA], including 29 U.S.C. § 216(b), which

26    allows an employee to sue his or her employer 'for and in behalf of himself or [herself] *and*

27    *other employees similarly situated.*'") (alteration and emphasis in original).  In contrast,

28    ADEA suits brought by the EEOC are governed by §§ 216(c) and 217, neither of which

1    contain a "similarly situated" requirement.  29 U.S.C. §§ 216(c), 217; *see Glass*, 778 F. Supp.

2    at 1081 ("The EEOC's power to bring a direct suit rests on two sections of the ADEA, 29

3    U.S.C. §§ 216(c) & 217, which do not contain the 'similarly situated' standard applicable

4    to private suits brought [pursuant] to 29 U.S.C. § 216(b).").[3]

5         The Court concludes that the "similarly situated" requirement in § 216(b) does not

6    apply to Plaintiff's claims as a matter of law because Plaintiff properly brought this action

7    pursuant to §§ 216(c) and 217, not § 216(b).  Doc. #1 ¶ 7; *see Flavel*, 875 F. Supp. at 553

8    ("Unlike a private representative suit, the EEOC's authority to bring such an action is not

9    limited to circumstances where the plaintiffs are 'similarly situated.' . . . [T]he EEOC may

10   proceed in this matter on behalf of the plaintiffs whether or not they are 'similarly

11   situated[.]'"); *Donovan*, 643 F.2d at 1204 (stating that the language of § 216(b) makes clear

12   that suits under § 217 "are to be brought by the Government, and that the Government has

13   the power to seek class-wide relief for the victims without resorting to Rule 23").  The Court

14   further concludes that Plaintiff need not rely on the single filing rule with respect to

15   Leach's claim because ADEA suits brought by the EEOC are not subject to a statute of

16   limitations.  *See Occidental Life*, 432 U.S. at 359-72.

17        Defendant's reliance on *Grayson* and *Hipp* is misplaced because both

18   cases involved private suits by employees under § 216(b), not actions by the EEOC under

19   §§ 216(c) and 217.  *See Grayson*, 79 F.3d at 1095-1102 (holding that the similarly situated

20   requirement in § 216(b) is not stringent and that an individual may piggyback onto the

---

22   [3]Section 216(b) provides that an employee may obtain all appropriate relief,
     including unpaid minimum wages and overtime compensation, lost wages, liquidated
23   damages, employment, reinstatement, and promotion.  29 U.S.C. § 216(b).  Under § 216(c),
     the EEOC may bring an action on behalf of an employee "to recover the amount of unpaid
24   minimum wages or overtime compensation and an equal amount as liquidated damages."
     29 U.S.C. § 216(c).  Once the EEOC files suit seeking such relief, the employee's right to
25   bring an action under § 216(b) to obtain the same relief terminates.  29 U.S.C. § 216(b)-(c).
26   Under § 217, the EEOC may bring an action to obtain injunctive relief with respect to the
     payment of minimum wages or overtime compensation due employees.  29 U.S.C. § 217; *see*
27   *Donovan*, 643 F.2d at 1203-04, nn.5-7.

1   timely charge filed by a named plaintiff in class suits brought under § 216(b)); *Hipp*, 252

2   F.3d at 1217 (discussing the similarly situated requirement and the piggybacking rule in

3   class suits brought by employees under § 216(b)) (citing *Grayson*).   The only ADEA case

4   Defendant cites where the EEOC was a plaintiff is *EEOC v. MCI International, Inc.*, 829 F.

5   Supp. 1438 (D.N.J. 1993).   Doc. #48 at 10.   In that case, however, it appears that the EEOC

6   sought to obtain damages under § 216(b).   829 F. Supp. at 1445 (discussing §§ 216(b),

7   216(c), and 217 and stating that the EEOC brought the action "pursuant to these

8   provisions").   The district court concluded that the similarly situated requirement of §

9   216(b) was not met, but did so without addressing whether the EEOC could properly bring

10  an ADEA action under § 216(b).   *Id.*   The Court finds the holding in *MCI International*

11  inapposite because Plaintiff has not brought this action under § 216(b).   *See* Doc. #1 ¶ 7.

12      **C.    Is Plaintiff's Claim Regarding Leach Barred by the Doctrine of Laches?**

13          Leach was terminated on July 16, 1999 and filed his charge of discrimination nearly

14  four years later on June 30, 2003.   Doc. #49 ¶¶ 22, 59.   Plaintiff commenced this action on

15  September 18, 2003 and added Leach as a class member on April 6, 2004.   Docs. ##1, 33.

16          Defendant argues that Plaintiff's claim regarding Leach is barred by the equitable

17  doctrine of laches.   Doc. #48 at 14-15 (citing *EEOC v. Alioto Fish Co.*, 623 F.2d 86 (9th Cir.

18  1980)).   Defendant states that although most of the delay was caused by Leach himself,

19  Plaintiff has perpetrated the delay for at least another nine months by waiting until April

20  2004 to add Leach as a class member *Id.* at 14.   Defendant further states that Plaintiff was

21  aware of Leach's claim before it filed suit and "acted in a way that was inherently

22  prejudicial to [Defendant] by telling [Defendant] that Leach's charge would not be

23  considered because it was untimely." *Id.* at 15.   Defendant states in its reply that it has

24  been prejudiced by the  delay because Jon Jaffe, Defendant's former Regional President,

25  could not specifically recall at his deposition in January 2005 whether Leach's sales were

26  low.  Doc. #129 at 14 (citing Doc. #106 ¶ 21).

27          Plaintiff argues that Defendant has waived the defense of laches by not affirmatively

28  alleging it in a pleading and that the defense does not apply to suits brought by the EEOC

1  as a matter of law. Doc. #105 at 10-11. Plaintiff further argues that Defendant has not met

2  its burden of establishing the elements of the defense. *Id.* at 11.

3        The Court finds that Defendant has not waived the defense with respect to Leach

4  because Plaintiff identified Leach as a class member not in a pleading, but in a notice to the

5  Court to which no responsive pleading was required. *See* Docs. ##1, 33. The Court further

6  finds that laches may properly be raised as a defense in this case because the defense

7  applies to employment discrimination actions brought by the EEOC when such actions are

8  not governed by a statute of limitations. *See Occidental Life Ins.*, 432 U.S. at 373 (stating

9  that district courts have the power to provide relief to a defendant that has been

10 "significantly handicapped in making his defense because of an inordinate EEOC delay in

11 filing the action"); *Alioto Fish Co.*, 623 F.2d at 88 ("Laches . . . may be used as a defense

12 to a Title VII action."); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 586 (9th Cir. 1993)

13 (stating in an ADEA action that "laches is inapplicable when Congress has provided a

14 statute of limitations to govern the action").

15        "The defense of laches 'requires proof of (1) lack of diligence by the party against

16 whom the defense is asserted, and (2) prejudice to the party asserting the defense.'"

17 *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. 1980) (citations omitted).

18 Prejudice should not lightly be assumed from delay in employment discrimination actions

19 because some delay in such actions "will be attributable to the EEOC's time-consuming .

20 . . efforts at conciliation." *Id.* at 667 (citing *Occidental Life Ins. Co. of Cal. v. EEOC*, 432

21 U.S. 355, 368-72 (1977)). Moreover, "[l]aches questions are seldom susceptible of

22 resolution by summary judgment, because 'where laches is raised as a defense the factual

23 issues involved can rarely be resolved without some preliminary evidentiary inquiry.'" *Id.*

24 at 666 (citations and alterations omitted).

25        Because the parties did not brief the issue, it is unclear to the Court whether Leach's

26 delay in filing his charge of discrimination may be imputed to Plaintiff under the laches

27 doctrine. Moreover, the Court cannot determine from the record before it whether the

28 EEOC's delay in adding Leach as a class member was unreasonable. Nor can the Court

1   determine at the summary judgment stage whether Defendant has suffered prejudice from

2   the delay sufficient to support a laches defense.  *See Bratton*, 649 F.2d at 666 (stating that

3   prejudice should not lightly be presumed and that laches can rarely be resolved on

4   summary judgment); *cf. Alioto Fish Company*, 623 F.2d at 87-89 (affirming summary

5   judgment on the ground of laches where the undisputed facts showed that the defendant

6   was severely prejudiced when the EEOC brought suit more than five years after the charge

7   was filed and many of the key witnesses and records were unavailable).

8          If Defendant intends to raise the laches defense at trial, the parties shall identify it

9   as a contested issue in their proposed pretrial order and address whether Leach's delay

10  may be imputed to the EEOC for purposes of the defense.  The parties shall also address

11  how they propose to try the defense given that it is an equitable issue for the Court to

12  decide and that the Court does not intend to have a separate bench trial or evidentiary

13  hearing on the issue.

14          **D.      Has Plaintiff Satisfied Its Conciliation Obligations?**

15          Defendant argues that Plaintiff's claim regarding Leach should be dismissed

16  because Plaintiff failed to conciliate the claim.  Doc. #48 at 15-16.[4]   Plaintiff argues that it

17  has no legal obligation to conciliate the claims of each and every potential class member.

18  Doc. #105 at 8-9.  Plaintiff further argues that its conciliation efforts in this matter were

19  sufficient because it notified Defendant that it may file a class age discrimination suit and

20  afforded Defendant the opportunity to resolve the class claim.  *Id.* at 9; *see* Doc. #113 at

21  12-14.

22          The Court agrees with Plaintiff.  The Ninth Circuit has held that in class suits,

23  the EEOC is not required to conciliate on behalf of each potential class member.  *See EEOC*

24  *v. Bruno's Rest.*, 13 F.3d 285, 289 (9th Cir. 1993) (citing *EEOC v. Rhone-Poulenc, Inc.*,

25  876 F.2d 16 (3d Cir. 1989)); *see also EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101-02 (6th

26

27          [4]Defendant makes the same argument with respect to Plaintiff's claim regarding

28  Charlyne Sheehan.  *See* Doc. #68 at 12-13.

1    Cir. 1984) (holding that because the EEOC sufficiently conciliated a class claim that
2    reasonably grew out of the initial charge, no additional efforts at conciliation were
3    required); *EEOC v. GM Corp.*, 826 F. Supp. 1122, 1127 (N.D. Ill. 1993) (holding that the
4    EEOC's conciliation efforts were sufficient and permissibly premised on the class claim);
5    *EEOC v. Equicredit Corp. of Am.*, No. 02-CV-844, 2002 WL 31371968, *4 (E.D. Pa. Oct. 8,
6    2002) (holding that the EEOC's refusal to identify a potential class member did not render
7    its conciliation efforts inadequate) (citing *Keco Indus.*, 748 F.2d at 1102). In light of these
8    authorities, Plaintiff satisfied its conciliation obligation in this case by attempting to
9    conciliate the class claim. Moreover, case law teaches that substantial deference should
10   be given the EEOC in determining what level of conciliation effort is appropriate in a
11   particular case. *See EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1091
12   (C.D. Ill. 1998) (stating that the conciliation requirement is an easy burden to satisfy and
13   that substantial discretion is vested in the EEOC with respect to conciliation); *EEOC v.*
14   *N. Cent. Airlines*, 475 F. Supp. 667, 669 (D. Minn. 1979) ("[I]f some conciliation efforts have
15   occurred, substantial deference should be given to the EEOC's determination that
16   conciliation efforts have failed[.]").

17        **E.      Is There a Genuine Issue of Material Fact Regarding Discrimination?**

18        Defendant argues that Plaintiff has not made a prima facie case of discrimination
19   because Leach was not qualified for his position or meeting Defendant's expectations and
20   Plaintiff cannot show that similarly situated non-protected persons were treated more
21   favorably. Doc. #48 at 17 (citing Doc. #49 ¶ 26). To establish a prima facie case of age
22   discrimination, Plaintiff must show that Leach was (1) a member of the protected class
23   (at least age 40), (2) performing his job satisfactorily, (3) terminated, and (4) replaced by a
24   younger employee with equal or inferior qualifications. *See Messick v. Horizon Indus.,*
25   *Inc.*, 62 F.3d 1227, 1229 (9th Cir. 1995); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281
26   (9th Cir. 2000). "The requisite degree of proof to establish a prima facie case is minimal;
27   plaintiff need only offer evidence giving rise to an inference of unlawful discrimination."
28   *Messick*, 62 F.3d at 1229; *see Coleman*, 232 F.3d at 1282 (stating that the prima facie case

1   standard is a "low threshold"); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)

2   ("The amount of evidence that must be produced in order to create a prima facie case is

3   'very little.'") (citation and alterations omitted).

4         Plaintiff has presented evidence of the following:  Leach was more than 40 years old

5   when he was terminated and had more than 30 years experience in real estate sales and

6   general contracting, eight of those years in supervisory duties.  Doc. #106 ¶ 45.  Defendant

7   hired Leach as a real estate sales manager in December 1996 and during his employment

8   Leach was a licensed real estate agent and associate broker.  *Id.* ¶ 3.  Leach received

9   "generally positive" performance evaluations and a bonus from Defendant shortly before

10  his termination in July 1999.  *Id.* ¶¶ 32-35.  Leach's former duties as a sales manager were

11  assigned to Michael Dowell, who was less than 40 years old when he assumed the duties

12  and had less real estate and supervisory experience than Leach.  *Id.* ¶¶ 43, 45-46.  These

13  facts constitute sufficient prima facie evidence that Leach performed his job satisfactorily

14  and that his former duties were assigned to a younger employee with equal or inferior

15  qualifications.  *See Messick*, 62 F.3d at 1229 ("[T]here was sufficient evidence for the trier

16  of fact to infer that Messick was performing satisfactorily."); *Coleman*, 232 F.3d at 1281

17  (holding that when a discharge results from a reduction in workforce the plaintiff need not

18  show that he was actually replaced, but may show that the employer had a continuing need

19  for his skills and services and that his duties were still being performed).

20        Once a prima facie case has been established, the burden shifts to Defendant to

21  articulate a legitimate non-discriminatory reason for the termination.  *See Wallis*, 26 F.3d

22  at 889.  The EEOC must then produce evidence sufficient to create a genuine issue of

23  material fact as to whether Defendant's stated reason is pretextual.  *Id.*

24        Defendant states that Leach was terminated because his productivity was not

25  acceptable.  Doc. #48 at 17 (citing Doc. #49 ¶ 26; *see* Doc. #89 ¶ 26).  Although this would

26  be a legitimate, non-discriminatory basis for terminating an employee, the Court finds that

27  the EEOC has presented sufficient evidence of discriminatory intent to raise a question of

28  fact as to whether Defendant's stated reason is pretextual.  Specifically, Leach has testified

1   that David Kitnick, one of Defendant's Division Presidents, bragged during a meeting that

2   he needed to "get rid of the staff that he had" and "bring in younger people to fulfill his

3   mission." Doc. #106 ¶ 7.  Under Ninth Circuit law, this direct evidence of discriminatory

4   intent, standing alone, is sufficient to create a triable issue with respect to pretext.  *See*

5   *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (reversing summary

6   judgment for the defendant and stating that whether discriminatory remarks affected the

7   decision-making process was "a question appropriately answered by a trier of fact");

8   *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) ("Godwin testified that the

9   president of the company . . . made derogatory comments about women at meetings. . . .

10  Godwin's direct evidence of discriminatory animus satisfies the required showing at the

11  pretext stage."); *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005)

12  ("Because direct evidence is so probative, the plaintiff need offer 'very little' direct

13  evidence to raise a genuine issue of material fact.") (citing *Godwin*).

14          Defendant argues that Plaintiff "has mischaracterized the facts" because Kitnick's

15  alleged statement was vague and referred to past conduct since "[p]eople do not normally

16  brag about something that they have not done yet." Doc. #129 at 2.  Defendant essentially

17  asks the Court to construe the evidence in its favor.  At the summary judgment stage,

18  however, the Court must construe all evidence in favor of the nonmoving party – in this

19  case, the EEOC.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);  *Raad v.*

20  *Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (reversing

21  summary judgment for the defendant because "the district court . . . failed to draw all

22  reasonable inferences in favor of Raad, the nonmoving party, and impermissibly

23  substituted its judgment concerning the weight of the evidence for the jury's").

24          Plaintiff has also presented sufficient circumstantial evidence of pretext.  Leach has

25  testified that at the time of his termination his productivity was increasing. Doc. #106 Ex. C

26  ¶ 6.  Leach has further testified that he was never advised that his performance was

27  deficient or that improvement was necessary to retain his job even though Defendant had

28  a policy of advising employees of performance problems and attempting corrective action

1   before terminating the employees. *Id.* ¶¶ 27-28. Leach's personnel forms do not indicate

2   that he was terminated for lack of productivity. *Id.* ¶ 17. Rather, the forms indicate that he

3   was simply laid off and that his termination was a "cut back in staff." *Id.* The forms do not

4   mention a productivity problem even though Defendant's policy required the terminating

5   official to set forth a specific reason for the termination and the Employment Separation

6   Form completed for Leach provided space for such reason coupled with the instruction to

7   "[b]e as specific as possible." *Id.* ¶¶ 16-18. Such indirect evidence creates a question of

8   fact on pretext that must be resolved by the jury at trial. *See Godwin*, 150 F.3d at 1222

9   (stating that documents prepared contemporaneously with the challenged action that are

10  inconsistent with the defendant's stated reason for the action are probative of pretext);

11  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) ("Proof that the

12  defendant's explanation is unworthy of credence is simply one form of circumstantial

13  evidence that is probative of intentional discrimination, and it may be quite persuasive.").

14      Defendant has presented no evidence contemporaneous with Leach's termination

15  showing that Leach was not productive. Rather, Defendant relies on the post-termination

16  testimony of Leach's supervisors. Doc. #48 at 17 (citing Doc. #49 ¶ 26; *see* Doc. #89 ¶ 26).

17  Whether such testimony is to be believed is a matter of credibility for the jury to determine.

18  "Although 'shifting explanations are acceptable when viewed in the context of other

19  surrounding events, such weighing of the evidence is for a jury, not the [Court].'"

20  *Godwin*, 150 F.3d at 1222 (citation and alteration omitted); *see Anderson v. Liberty Lobby,*

21  *Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and

22  the drawing of inferences from the facts are jury functions, not those of a judge[.]"); *Harris*

23  *v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of

24  intent, should be left to the jury. When a plaintiff has provided direct and circumstantial

25  evidence of discriminatory intent, she . . . may be able to survive a motion for summary

26  judgment on that evidence alone.") (citations omitted).

27      Defendant contends that Leach's subjective beliefs regarding his qualifications and

28  performance are irrelevant and that the only issue is whether Defendant honestly believed

1    that Leach was not qualified and lacked productivity. Doc. #129 at 4-7 (citing *Palucki v.*

2    *Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989)). Defendant further contends

3    that Plaintiff cannot "show that the differences between Dowell's qualifications and those

4    of Leach are significant enough to 'jump off the page and slap you in the face.'" *Id.* at 6-7

5    (citing *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 279 (5th Cir. 1999)).

6    Under Ninth Circuit law, however, subjective evidence of an employees's qualifications

7    and job performance may be relevant on the question of pretext. *See Odima v. Westin*

8    *Tucson Hotel Co.*, 991 F.2d 595, 602 (9th Cir. 1993) (holding that the plaintiff's superior

9    qualifications standing alone were enough to prove pretext). The Ninth Circuit has "*never*

10   followed the Fifth Circuit in holding that the disparity in [employees'] qualifications 'must

11   be so apparent as to jump off the page and slap [you] in the face to support a finding of

12   pretext.'" *Raad*, 323 F.3d at 1194 (brackets added; emphasis in original). Moreover,

13   whether Defendant honestly believed that Leach was not qualified and lacked productivity

14   is an issue of fact for the jury. *See Harris*, 183 F.3d at 1051; *Braxton-Secret v. Robins Co.*,

15   769 F.2d 528, 531 (9th Cir. 1985) ("Questions involving a person's state of mind . . . are

16   generally factual issues inappropriate for resolution by summary judgment.").

17         For these reasons, the Court will deny Defendant's motion for partial summary

18   judgment regarding Leach.[5]

19   **II.    Defendant's Motion for Partial Summary Judgment Re: Charlyne Sheehan.**

20         Defendant argues that Plaintiff cannot make a prima facie case of discrimination

21   with respect to Sheehan because she voluntarily resigned when the new home community

22   to which she was assigned closed. Doc. #68 at 6-7. Plaintiff argues that it has made a

23   prima facie case because it has presented evidence that Defendant terminated Sheehan's

24   employment. Doc. #113 at 7-11. The Court finds that questions of material fact preclude

25   summary judgment.

26   _____

27         [5]The Court will grant Defendant's motion to exceed page limits and motion to
     supplement its statements of facts. Docs. ##101, 131. The Court will deny as moot
28   Plaintiff's motion to strike facts and evidence submitted by Defendant. *See* Doc. #104.

1    Plaintiff has presented evidence of the following:  Defendant hired Sheehan as a

2   new home sales consultant in February 1996.  Doc. #114 ¶ 1.  Michael Dowell, Sheehan's

3   supervisor, assigned her to the Park Rowe community in February 2000.  *Id.* ¶ 5.  Park Rowe

4   was scheduled to close in March 2000.  *Id.*  When the advertising for Park Rowe had been

5   taken down, Sheehan discussed with Dowell the possibility of transferring to another

6   community.  *Id.* ¶¶ 9, 11.  Dowell repeatedly told Sheehan that there were no open

7   communities to which she could be transferred.  *Id.* ¶ 11.  Sheehan thus determined that her

8   services were no longer needed by Defendant.  *Id.* ¶ 35.

9    Defendant's notice to Sheehan regarding her change in employment shows both

10  that her departure was "voluntary" and "involuntary."  *Id.* ¶ 36.  The notice indicates that

11  her "involuntary" departure and "[l]ayoff" were effective May 8, 2000, the same date

12  charging parties Carol Nikrant and Gordon Cameron were laid off by Defendant.  *Id.* ¶¶36-

13  39.[6]  The notice further indicates that Sheehan was laid off because there was "no new

14  community" available.  *Id.* ¶ 36.  Sheehan wrote at the bottom of the notice that she "was

15  laid off because there was no new community for [her] to go to" and that she "would have

16  stayed on with [Defendant] otherwise."  *Id.* ¶ 37.

17   These circumstances, construed in Plaintiff's favor, constitute evidence that

18  Sheehan was terminated and satisfy the low prima facie case standard.  *See Messick v.*

19  *Horizon Indus., Inc.*, 62 F.3d 1227, 1229 (9th Cir. 1995) ("The requisite degree of proof to

20  establish a prima facie case is minimal[.]"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271,

21  1281 (9th Cir. 2000) (stating that the prima facie case standard is a "low threshold"); *see*

22  *also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 971 (9th Cir. 2002) (reversing

23  summary judgment for the defendant on Title VII and wrongful discharge claims in part

24  because there were issues of fact as to whether the plaintiff resigned or was terminated).[7]

25  _____

26   [6]Charging party Jacque Judge was laid off one week earlier on May 1, 2000.  *Id.* ¶ 39.

27   [7]Defendant does not address the notice in its reply, stating only that "there is

28  absolutely no evidence that [it] intended to or did terminate Sheehan."  Doc. #146 at 4.

1    Defendant argues that Plaintiff has  presented no evidence of discrimination even

2    if Sheehan is determined to have been terminated.  Doc. #68 at 7.  As discussed above,

3    however, Leach testified that Kitnick said he had to get rid of the staff and "bring in some

4    younger people."   Doc. #114 ¶¶ 52-53.   Nikrant has testified that Dowell asked her,

5    "Just how old of a person is Jacque Judge?"  *Id.* ¶ 54.  Dowell made the same inquiry to

6    former sales consultant Marilyn Harris.  *Id.*  Kitnick's statement coupled with Dowell's

7    inquiries constitute direct evidence of discrimination sufficient to survive summary

8    judgment.  *See Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996)

9    (reversing summary judgment for the defendant where the plaintiff was told that he would

10   not be considered for a promotion because the defendant wanted someone younger for the

11   job); *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1149-50, n.5 (9th Cir. 1997) (reversing

12   summary judgment for the defendant and stating that the fact that a manager's

13   discriminatory comments were recounted by the plaintiff's coworkers did not lessen the

14   probative value of the comments); *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 684 (9th Cir. 1997)

15   ("[Defendant] would have this court hold that discriminatory remarks are tied to the

16   decision process only if a decision maker said something to the effect of 'I'm firing you

17   because you are too old.'  Few employers who engage in illegal discrimination, however,

18   express their discriminatory tendencies in such a direct fashion[.]"); *Coghlan v. Am.*

19   *Seafoods Co.*, 413 F.3d 1090, 1095 n.6 (9th Cir. 2005) ("[W]hen evidence establishes the

20   employer's animus toward the class to which the plaintiff belongs, the inference to the fact

21   of discrimination against the plaintiff is sufficiently small that we have treated the evidence

22   as direct.") (citing *Cordova*).

23    Plaintiff has also presented sufficient circumstantial evidence of pretext.  Construed

24   in its favor, Plaintiff's evidence shows the following:  Sheehan could have been transferred

25   to a new community when the Park Rowe community closed.  Doc. #114 ¶¶ 12, 14-16.

26   Defendant transferred sales consultants younger than Sheehan from Park Rowe to other

27   communities. *Id.* ¶¶ 6-7, 30-31. Defendant was hiring sales consultants who were less than

28   40 years old and less experienced than Sheehan for new communities at the same time

Dowell was telling her that no new communities were available. *Id.* ¶¶ 17-29. Sheehan was laid off on the same date as Cameron and Nikrant, both of whom were over 40 years old. *Id.* ¶ 39. Sheehan and the charging parties were the only Arizona sales consultants who were laid off instead of being transferred when their respective communities closed. *Id.* ¶ 34.

A jury could reasonably conclude from this evidence that Defendant's stated reason for Sheehan's departure – that there were no new communities to which she could be transferred – is unworthy of credence. *See Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").[8] The Court will deny Defendant's motion for partial summary judgment regarding Sheehan.

**III.    Defendant's Motion for Partial Summary Judgment Re: Carol Nikrant, Jacque Judge, and Gordon Cameron.**

Defendant states that the charging parties were laid off because of the closing of their communities and performance issues. Doc. #70 at 5 (citing Doc. #49 ¶ 45). Defendant argues that Plaintiff has no direct evidence of discrimination and cannot otherwise show that Defendant's stated reasons for terminating the charging parties were pretextual. *Id.* at 7-10.[9]

---

[8]Defendant contends that any inference of discrimination is negated because Sheehan had been promoted from a "rover" position to a full-time assignment shortly before her departure. Doc. #68 at 7. This evidence must be weighed against the evidence recounted above, a task for the jury.

[9]Defendant also argues that the charging parties were not qualified for their positions or meeting Defendant's expectations. *Id.* ¶ 9 (citing Doc. #49 ¶ 26). The evidence Defendant relies on in support of its argument, however, refers to Leach, not the charging parties. *See* Doc. #49 ¶ 26 ("Leach was discharged because he was unable to achieve adequate or consistent productivity[.]"). Moreover, the Court finds that Plaintiff has presented sufficient evidence to make a prima facie case with respect to the charging parties. *See* Docs. ##116 at 7-9; 117 ¶¶ 77, 79-81, 93, 96, 119, 121, 125-28, 146, 159, 182, 217-18.

As noted above, Kitnick's comment regarding his desire to "bring in some younger people" coupled with Dowell's inquiries regarding Judge's age constitute direct evidence of discrimination sufficient to survive summary judgment. Doc. #116 at 6-7 (citing Doc. #117 ¶¶ 25-29). Plaintiff has also presented sufficient circumstantial evidence of pretext to survive summary judgment. *Id.* at 9-21. The Court finds that there are genuine issues of material fact as to (1) whether Defendant falsely told the charging parties that there were no communities to which they could be transferred,[10] and (2) whether the charging parties were terminated because of performance problems.[11] The Court will deny Defendant's motion for partial summary judgment regarding Nikrant, Judge, and Cameron.[12]

## IV. Defendant's Motion for Partial Summary Judgment Re: Limitation of Damages for Gregory Leach.

Defendant argues that the potential damage period for Leach is limited, as a matter of law, to the time between his termination on July 16, 1999 and Defendant's sale of its Ventana Lakes community to Shea Homes on November 1, 2000. Doc. #90 at 1-2 (citing *Sivell v. Conwed Corp.*, 666 F. Supp. 23, 25-26 (D. Conn. 1987)). Plaintiff disagrees based on the following undisputed evidence: Leach's job duties as a sales manager at Ventana Lakes included new home sales and he was hired as a salesman by Royce Homes after his termination. Doc. #110 ¶¶ 7-8. When Ventana Lakes was sold, Dowell and Barry Grant, Defendant's President, told the employees that if they wanted to stay on with Defendant positions would be found for them and that they were welcome to come back if they took jobs with Shea and did not like them. *Id.* ¶¶ 2-3. One employee stayed on with Defendant

---

[10]*See* Docs. ##116 at 10; 117 ¶¶ 33-34, 39-41, 47-48, 68-77, 79-100.

[11]*See* Docs. ##116 at 10-13; 117 ¶¶ 35, 49, 51, 54-59, 65-66, 101-14, 117, 136-37, 147, 159-63, 168, 182, 185-86, 196, 210, 216-18.

[12]The Court will deny as moot Plaintiff's motion to strike facts and evidence submitted by Defendant. Doc. #115. The Court will grant Defendant's motion to supplement replies and deny its motion to strike evidence as moot because the Court did not consider the challenged evidence. Docs. ##145, 148.

1    and two employees were hired by Shea. *Id.* ¶¶ 4-6.

2         Construing this evidence in Plaintiff's favor, the Court finds that there are genuine

3    issues of material fact as to whether Leach would have remained with Defendant or been

4    hired by Shea if he had not been terminated prior to the sale of Ventana Lakes.  *See Bonura*

5    *v. Chase Manhattan Bank, N.A.*, 629 F. Supp. 353, 356 (S.D.N.Y. 1986) (holding that the

6    defendant's liability to ADEA plaintiffs did not end with the sale of the division in which

7    they worked prior to their termination because there was evidence that they would have

8    been retained by the defendant or its successor); *Gibson v. Mohawk Rubber Co.*, 695 F.2d

9    1093, 1098 (8th Cir. 1982) ("[T]he jury reasonably could have found that Mohawk would

10   have retained Gibson after it closed its West Helena facility.  Thus, the district court did

11   not err in refusing to limit Gibson's recovery as a matter of law to the period prior to the

12   West Helena plant's closure.").[13]   The Court will deny Defendant's motion for partial

13   summary judgment regarding limitation of damages for Leach.

14   **V.    Defendant's Motion for Partial Summary Judgment Re: Limitation of Damages
            for Certain Claimants.**

15

16        Defendant argues that Nikrant, Sheehan, Cameron, and Judge are entitled to no

17   backpay or limited backpay because they failed to mitigate their damages.  Doc. #92 at 1.

18   Defendant has the burden of proof on this issue.  *See Odima v. Westin Tucson Hotel*, 53

19   F.3d 1484, 1497 (9th Cir. 1995).  Defendant must prove "'that, based on the undisputed

20   facts in the record, during the time in question there were substantially equivalent jobs

21   available, which [the claimants] could have obtained *and* that [the claimants] failed to use

22   reasonable diligence in seeking one.'"  *Id.* (quoting *EEOC v. Farmers Bros. Co.*, 31 F.3d

23   891, 906 (9th Cir. 1994) (emphasis in *Farmers*)); *see Cassino v. Reichhold Chems., Inc.*, 817

24   F.2d 1338, 1345 (9th Cir. 1987) ("The defendant bears the burden of showing that there were

25   suitable positions available and that the plaintiff failed to use reasonable care in seeking

26

27        [13]Defendant's reliance on *Sivell* is misplaced because the plaintiff in that case

28   presented no evidence that he would have remained with the defendant or been hired by
     its successor. 666 F. Supp. at 25-26.

1   them.").

2       Plaintiff contends that Defendant has not proven that suitable jobs were available

3   to the claimants as a matter of law.  Doc. #119 at 4-6.  Defendant contends that it has met

4   its burden on this element because Nikrant, Sheehan, and Cameron obtained jobs selling

5   real estate shortly after they left Defendant's employment.  Doc. #92 at 2-3.  The Court

6   need not resolve this issue because it finds that Defendant has not satisfied the second

7   requirement of its failure-to-mitigate defense – showing that the claimants failed to use

8   reasonable diligence in seeking new jobs.

9       **A.    Carol Nikrant.**

10      Defendant acknowledges that Nikrant found a job at Jackson Properties within a

11  week of her termination and worked there until July 18, 2001.  Doc. #92 at 5.  Defendant

12  further acknowledges that Nikrant worked at Real Estate Temps from July 18, 2001 to

13  January 29, 2002.  *Id.* at 6.  Defendant states that Nikrant then retired to the Pinetop-

14  Lakeside area and cared for her mother-in-law on a full-time basis.  *Id.* at 6 (citing Doc. #93

15  ¶¶ 25-26, Ex. E (Nikrant Dep. at 7, 19-26, 76)).  Defendant contends in its motion that

16  Nikrant's claim for damages should end on July 18, 2001 because Nikrant could have

17  obtained permanent employment with Real Estate Temps.  *Id.* at 6, 12.  Defendant contends

18  in its reply that damages should end no later than January 29, 2002, when Nikrant left Real

19  Estate Temps and moved to Pinetop-Lakeside.  Doc. #147 at 3-4.

20      Plaintiff has presented an affidavit from Nikrant in which she testified that after

21  January 29, 2002 she sought "employment in the real estate field and applied to Torreon

22  Realty, Arizona Realty and Madico Realty" and  "also applied at White Mountain Country

23  Club and Home Depot (three times)."  Doc. #120 Ex. C ¶¶ 8-9.  Nikrant further testified that

24  she was able to care for her mother-in-law and still work until her husband became ill in

25  December 2004, but that he fully recovered by April 2005.  *Id.* ¶ 9.

26      Defendant contends that Nikrant's affidavit directly contradicts her deposition

27  testimony that "she had done essentially nothing to become employed in the real estate

28  community subsequent to retiring to Pinetop-Lakeside."  Doc. #147 at 3 (citing Doc. #93

1  ¶ 26).  Defendant further contends that the affidavit is offered solely to avoid summary

2  judgment and that "Nikrant is bound by her deposition testimony."  *Id.* (citing *Burrell v.*

3  *Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir. 1999) (holding that the plaintiff's affidavit

4  sought to create "sham issues of fact" because her allegations of sexual harassment

5  appeared for the first time in the affidavit and directly contradicted her prior deposition

6  testimony)).

7       The Court has reviewed the portions of the Nikrant deposition cited by Defendant

8  and cannot conclude that the affidavit is a sham.[14]  Nikrant explicitly testified at her

9  deposition that she sought employment at Torreon and Madico Realty and that she

10 inquired with another realtor but could not recall the name.  Doc. #93 Ex. E, Nikrant Dep.

11 at 20, 23, 25-26.  Nikrant did not testify these were her only efforts to obtain employment

12 in the Pinetop-Lakeside area.  Nor did she unequivocally testify that she was unable to

13 work due to the care she provided her mother-in-law.  *See id.* at 20-21.

14      The "sham affidavit" rule "does not automatically dispose of every case in which

15 a contradictory affidavit is introduced to explain portions of earlier deposition testimony."

16 *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).  Rather, the trial court

17 must find that the affidavit "flatly contradicts" earlier testimony and is in fact a sham.  *Id.*

18 at 266.  The Court cannot make that finding in this case.

19      Questions of fact preclude summary judgment on whether Nikrant failed to seek

20 employment with reasonable diligence after July 18, 2001 or January 29, 2002.

21 **B.    Charlyne Sheehan.**

22      Defendant acknowledges that Sheehan found a new job within a week of her

23 departure and has been employed as an activities director for Cal-Am Properties since

24 November 2001.  Doc. #92 at 6.  Defendant nonetheless argues that Sheehan should be

25 denied damages from November 2001 because she "voluntarily left the real estate market"

26

27      [14]The Court has not read the entire Nikrant deposition.  The Court is required to
review only those portions of the evidence cited by the parties.  *See Carmen v. S.F.*

28 *Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

1  and "allowed her license to sell real estate to expire[.]" Doc. #147 at 4.  The Court agrees

2  with Plaintiff's argument that Sheehan was not required to stay in the same profession in

3  order to mitigate her damages.  Doc. #119 (citing *Odima*, 53 F.3d at 1497).

4  **C.    Gordon Cameron.**

5  Defendant acknowledges that Cameron began working for Ryland Homes on

6  January 1, 2001 and for Centex Homes in October 2003.  Doc. #92 at 7.  Defendant asserts,

7  without analysis, that "Cameron should be barred from back-pay after January 1, 2000, the

8  date he was employed by Ryland, but not later than October 2003, when he was employed

9  by Centex." *Id.* at 12.[15]

10  Defendant appears to be taking the position that Cameron's damages ceased after

11  he found employment with Ryland and Centex.  As Plaintiff points out, however, this is a

12  question of the amount of damages, not of mitigation.  Doc. #119 at 12.  Indeed, Cameron's

13  employment with Ryland and Centex is evidence that he used reasonable diligence in

14  seeking employment after his termination.  The amount of damages to be recovered by

15  Cameron, if any, will be decided by the jury.

16  **D.    Jacque Judge.**

17  Defendant contends that Judge is entitled to no backpay because although she

18  worked in "resale real estate from June 2001 until December 2003, she made only $6,000.00

19  during that period and did virtually nothing to obtain employment with a

20  homebuilder/developer." Doc. #92 at 5.  As explained above, a claimant is not required to

21  stay in the exact same line of work in order to mitigate her damages.  *See Odima*, 53 F.3d

22  at 1497.  Moreover, Judge has testified that she sought re-employment with Defendant and

23  sought employment with four other new home builders after her termination.  Doc. #120 ¶¶

24  14-19.  Judge has further testified that her termination was so shocking and traumatic that

25  it devastated her self-esteem and made it difficult for her to seek other employment.  *Id.* ¶

26

27  [15]  Defendant notes that Cameron was fired from Centex for misconduct.  *Id.* Plaintiff,
however, is not seeking damages for Cameron after March 1, 2004, the date he lost his job

28  with Centex.  Doc. #119 at 12 (citing Doc. #120 ¶ 49).

7.

Construing the evidence in Plaintiff's favor, the Court finds that questions of fact exist as to whether Nikrant failed to seek employment with reasonable diligence after her termination. *See EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 684 (9th Cir. 1997) (holding that the claimant's efforts to seek employment by reviewing the want ads was not unreasonable as a matter of law where there was evidence that his lack of aggressiveness in pursuing new employment was common among older workers: "[W]e think it . . . appropriate to tailor the reasonableness inquiry to the particular characteristics of the injured plaintiff. . . . Accordingly, the evidence about [the claimant's] mental condition following his discharge was sufficient to support the jury's conclusion that his mitigation efforts were reasonable.").

The Court will deny Defendant's motion for partial summary judgment on damages for certain claimants.

**VI.   Defendant's Motion to Strike Any Claims Asserted on Behalf of Gregory Leach and Charlyne Sheehan and Alternative Motion for Leave to Amend Answer.**

**A.   The Motion to Strike Claims.**

In its motion to strike claims, Defendant seeks to have Plaintiff's claims regarding Leach and Sheehan stricken on the ground that Plaintiff has not amended the complaint to include the claims. Doc. #133 at 2-3. Defendant filed the motion on April 19, 2005. *Id.* The deadline for filing dispositive motions, however, was April 1, 2005. Docs. ##24 ¶ 7(a), 43 ¶ 1(F). Defendant does not mention the fact that the motion is untimely. Nor has Defendant shown "good cause" under Rule 16(b) of the Federal Rules of Civil Procedure.[16]

The parties' joint case management report provides that, consistent with its

---

[16]Rule 16(b) provides that the district judge shall enter a scheduling order governing the case and that the "schedule shall not be modified except upon a showing of good cause[.]" Fed. R. Civ. P. 16(b); *see Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Courts set [pretrial] schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.").

1    complaint, Plaintiff "may identify additional class members on whose behalf it will seek

2    relief." Doc. #22 ¶ 6; *see* Doc. #1 at 1 ("This is an action under the [ADEA] to correct

3    unlawful employment practices on the basis of age and to provide relief to Jacque Judge,

4    Carol Nikrant, Gordon Cameron, *and a class of protected age group persons whom*

5    *Defendant laid off because of their age*.") (emphasis added).   In its case management

6    order, the Court set an April 6, 2004 deadline "for adding class members to this case[.]"

7    Doc. #24 ¶ 2. Plaintiff timely filed a notice adding Leach and Sheehan as "additional class

8    members on whose behalf [Plaintiff] will seek relief in this case[.]" Doc. #33.

9          Defendant did not object to the notice.  Nor did Defendant argue in any one of its

10   five summary judgment motions that Plaintiff's claims regarding Leach and Sheehan should

11   be barred because Plaintiff had not amended the complaint to include the claims.   The

12   Court finds that Defendant has not shown good cause for filing its motion to strike after

13   the dispositive motion deadline. *See* Fed. R. Civ. P. 16 Advisory Comm.'s Notes (1983 Am.)

14   (stating that good cause exists when a deadline "cannot reasonably be met despite the

15   diligence of the party seeking the extension"); *Johnson*, 975 F.2d at 609 (holding that the

16   plaintiff "failed to demonstrate good cause for his belated motion to amend" and stating

17   that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party

18   seeking the amendment").   The Court will deny Defendant's motion to strike.[17]

19         **B.    The Alternative Motion for Leave to Amend Answer.**

20         In its alternative motion, Defendant seeks leave of Court to amend its answer to

21   include the defense of laches and other unspecified defenses purportedly applicable to

22   Leach and Sheehan. Doc. #33 at 3-5.  Plaintiff argues that, except with regard to the laches

23

24         [17]Defendant states in its reply that its motion to strike is not untimely because it
     "raises an issue of subject matter jurisdiction which cannot be waived by any party and
25   can be considered by the Court at any time." Doc. #153 at 7.  Defendant argues that the
     Court lacks subject matter jurisdiction because Plaintiff failed to conciliate the claims
26   regarding Leach and Sheehan. *Id*.  As explained above, however, Plaintiff had no legal
     obligation to conciliate each class member's claim. *See EEOC v. Bruno's Rest.*, 13 F.3d 285,
27   289 (9th Cir. 1993).
28

1  defense against Leach, Defendant has offered no explanation as to why it seeks leave to
2  amend its answer more than a year after Leach and Sheehan were added as class members
3  and months after it filed summary judgment motions regarding their claims.  Doc. #142 at
4  3.  Plaintiff further argues that the proposed amended answer is inappropriate because it
5  includes allegations learned during discovery regarding the charging parties and a new
6  allegation that the original complaint was untimely.  *Id.* at 4 (citing Doc. #133 Ex. A).
7  Plaintiff concludes that Defendant has no need to supplement its answer with lengthy
8  allegations already raised in its motions for summary judgment. *Id.* at 3.

9        As explained above, Defendant has not waived its laches defense with respect to
10  Leach by  not having raised the defense in its answer.  Nor has Plaintiff argued, or the
11  Court concluded, that Defendant has waived any other defenses with respect to Leach or
12  Sheehan.   The Court thus finds that Defendant's proposed amended answer is
13  unnecessary. The Court will deny Defendant's motion for leave to amend answer.

14        **IT IS ORDERED:**

15        1.     Defendant's request for oral argument (Doc. #54) is **denied**.

16        2.     Defendant's motions for partial summary judgment (Docs. ##48, 68, 70, 90, 92)
17  are **denied**.

18        3.     Defendant's motion for leave to exceed page limits (Doc. #101) is **granted**.

19        4.     Plaintiff's motions to strike facts and evidence submitted by Defendant
20  (Docs. ##104, 115) are **denied** as moot.

21        5.     Defendant's motions to supplement (Docs. ##131, 148) are **granted**.

22        6.     Defendant's motion to strike claims and alternative motion for leave to amend
23  answer (Doc. #133) are **denied**.

24        7.     Defendant's motion to strike evidence (Doc. #145) is **denied** as moot.

25        8.     Defendant's motion to correct the record (Doc. #152) is **granted**.

26        The Court will set a pretrial conference by separate order.

27

28

1    DATED this 30th day of September, 2005.

2

3

4

5                                   David G. Campbell
                                 United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28